The STATE of Ohio, Appellee,

v.

MURNAHAN, Appellant.

[Cite as *State v. Murnahan* (1996), 117 Ohio App.3d 71.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 96CA04.

Decided Dec. 27, 1996.

72

*Stephen A. Schumaker*, Clark County Prosecuting Attorney, and *Roger A. Ward*, Assistant Prosecuting Attorney, for appellee.

*Roy E. Murnahan, pro se.*

FREDERICK N. YOUNG, Judge.

On March 24, 1992, Roy E. Murnahan appeared in open court, represented by counsel, executed a waiver of indictment, and entered a plea of guilty to the charge of attempted rape (R.C. 2923.03 and 2907.02), an aggravated felony of the second degree, which had been set forth in a bill of information. The matter was set over for a presentence investigation. On April 21, 1992, a disposition hearing was held in the Common Pleas Court of Clark County, Ohio, and Murnahan was sentenced for a term of incarceration from eight to the maximum of fifteen years, and assessed court costs.

On February 1, 1996, Murnahan filed a motion *pro se* requesting leave to file a delayed appeal pursuant to App.R. 5(A) in this court, which we granted on March 1, 1996.

Although the Prosecutor's Office of Clark County did not contest Murnahan's motion for leave to file a delayed appeal, it did file a brief in this matter in response to Murnahan's *pro se* brief. Murnahan also filed a *pro se* reply brief.

Murnahan has presented us, *pro se,* with the following five assignments of error:

### "ASSIGNMENT OF ERROR AND ARGUMENT I:

"The defendant-appellant, Roy E. Murnahan, in the case below in 92–CR–169, was denied the effective assistance of trial court counsel by James N. Griffin, Esq., who: (1) failed to place his objection on the record when the state of Ohio breached its plea bargain deal promise to remain silent during the sentencing phase, (2) failed in the first instance to investigate and order a competency hearing under R.C. 2945.37 when ipso facto evidence on the record revealed that the accused was a 'slow person' and 'slow to understand,' (3) failed to investigate and subpoena in teachers of the accused who could and wanted to testify, (4) failed to object when the court took judicial notice without more and/or interfered [*sic*] into the plea bargaining process all in violation of the federal Constitution and Article I, § 10 and § 16 of the Ohio Constitution.

### "ASSIGNMENT OF ERROR AND ARGUMENT II:

"The trial court erred in failing to orally inform the defendant-appellant under Crim.R. 11(C) O.R.Crim.P. and advise him under R.C. 2951.02(F)(4), and R.C. 2929.01(2), that the charge was non-probationable especially when trial counsel asked the judge to have the 'probation department, could talk to Mr. Murnahan' which prejudiced his rights under Ohio law to 'voluntarily' and 'knowingly' enter a plea of guilty violative of the Fourteenth Amendment rights of the U.S. Constitution and Ohio Constitution.

### "ASSIGNMENT OF ERROR AND ARGUMENT III:

"The trial court erred and abused its discretion by violating Canons, 1, 2(A), and 3(A)(1), Code of Judicial Conduct by failing to remain neutral, taking judicial notice and permitting the prosecution to breach the plea bargain deal to remain silent at sentencing phase violative of the Fourteenth Amendment of the federal and Ohio Constitutions.

### "ASSIGNMENT OF ERROR AND ARGUMENT IV:

"Trial court erred by specifically stepping into the plea bargaining process during the oral dialogue and advising the accused the plea of guilty entered by

his counsel was entered and implied its better than going to trial in violation of the Fourteenth Amendment [to the] United States Constitution.

### "ASSIGNMENT OF ERROR AND ARGUMENT V:

"The trial court erred and abused its discretion by assigning attorney James N. Griffin to represent the defendant-appellant (3) three days after he had entered his plea of guilty, thereby at the entering of his plea of guilty the accused had no attorney, hence he is entitled to his release under *Gideon v. Wainwright* (1963), 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799], under the Sixth and Fourteenth Amendments to the federal Constitution."

In his brief, Murnahan has presented us with very articulate and vigorously argued assignments of error, but for purposes of our analysis, we prefer to rearrange the issues he has presented and deal with them under three separate headings, not in the order in which he has presented them in his brief. Accordingly, we shall first analyze the prosecutor's alleged misconduct. Under our second heading, we shall analyze the alleged errors of the trial court. Finally, we shall analyze Murnahan's arguments for the alleged ineffectiveness of his trial counsel.

### I

Murnahan argues in his Assignments of Error I, II (reply brief only), and III that the prosecutor breached his plea bargain agreement to remain silent at the disposition hearing, and that his statements at the hearing led the court to impose the maximum sentence, which was higher, in Murnahan's belief, than he had expected.

At the plea hearing held on March 24, 1992, the following exchange occurred:

"[THE COURT]: You have a bill of information?

"MR. LIND [Prosecutor]: Yes, Your Honor.

"THE COURT: Is [*sic*] there any other conditions other than just the presentation of this case as an attempted rape?

"MR. LIND: No, Your Honor.

"MR. GRIFFIN [Defense counsel]: Just that the State would not oppose a presentence report and I believe would stand silent at the time of sentencing.

"MR. LIND: That's a correct statement, Your Honor.

"THE COURT: All right."

At the disposition hearing on April 21, 1992, the court first requested and heard a statement from defense counsel (more about that later) and then the

court turned to the prosecuting attorney (the same one present at the plea hearing) and said:

"THE COURT: All right. Do you want to be heard?

"MR. LIND: Yes, Your Honor. Thank you. Based upon the plea agreement to a lesser offense and the fact that there was ongoing conduct and also a plea to a lesser number of offense I feel that a maximum sentence is appropriate in this situation. As the presentence investigation has shown the Defendant has shown no remorse for his actions. He might be slow in realizing what the Court procedures are but his educational level is high enough to appreciate the fact that what he was doing was wrong.

"What the Court really needs to take into effect is the fact that we have a 7-year-old child and I don't think that the lasting detrimental effects of the child can be weighed in any sense here today. The child has had to have been removed from the home. The child will be living with these scars for the rest of his life. I hope the Court will take this into consideration and, again, we recommend the maximum sentence. Thank you."

It is obvious that the prosecutor did, in fact, breach his agreement to remain silent at the disposition hearing and, therefore, exhibited a regrettable, perhaps even reprehensible, lack of good faith. On appeal, the state confesses that it "should have remained silent." Had the trial court then said, in words to this effect: "Well, I had not planned to impose the maximum sentence, but after hearing the points you made, Mr. Prosecutor, I have changed my mind and I will do it," we might well have had reversible error as to the sentence imposed, but the court did not say that. In fact, it is necessary for our analysis at this point and, indeed, for our understanding of the entire case here, that we set forth the exchange that occurred at the disposition hearing immediately following the prosecutor's remarks and including the judge's explanation of his sentence:

"THE COURT: Is there anything you'd like to say this morning, Mr. Murnahan?

"THE DEFENDANT: Yes, Your Honor. I know what I done was wrong and I'm very sorry for what I've done. I don't want the max.

"THE COURT: All right.

"MR. GRIFFIN: Your Honor, one thing I meant to say and I'd intended to and Roy and I had discussed this, Roy understands that what he has done has had a terrible impact on his brother but that if the Court would significantly incarcerate Roy for the maximum period of time that that also may have detrimental impact on Danny to understand that Danny's got a lot to work through but incarceration of Roy cuts both ways.

"THE COURT: All right. And it always does when it's a family member that's being subjected to this kind of circumstance. I recognize that, particularly a younger brother.

"Well, I've reviewed the presentence investigation as well as all of the psychological records that have been submitted to me by those who've had contact with you, Mr. Murnahan. And in reviewing the accounts that I have here of this activity, very frankly, it does appear to me that you've been given a substantial consideration or break, I guess is the choice of words that you'd understand most clearly, in allowing you to plead to this one count of attempted rape because it appears to me from what I see here that this was to some extent an ongoing sexual activity that you were involved in; and I recognize that you blame principally the other party and I suppose he blames you, but in any event, there is no question about the fact that there were probably a number of very— much more serious counts available that could have been filed.

"Actually, in reviewing this sentence, this presentence investigation I do think that the appropriate sentence is an 8 to 15 year penitentiary sentence, that's what I'm going to impose. The costs will be imposed. I recognize that your little brother's going to have some difficulty dealing with the fact that you're separated from him because of this situation. I think he's probably well-off and once he understands why you're separated that he'll be able to deal with that more easily than having to deal with you in his presence for awhile; and the costs will be imposed."

We do not know anything about the underlying facts of this case beyond what is contained in the foregoing excerpt from the transcript of the disposition hearing. It is quite obvious, however, that the court did not base its sentence upon the remarks of the prosecutor (uncalled for as they were), but upon the court's own review of the presentence investigation and Murnahan's psychological records. The court noted that Murnahan had "been given a substantial consideration or break," allowing him to plead guilty to one count of attempted rape when, in fact, it seems apparent "that there were probably a number of very— much more serious counts available that could have been filed."

 In his reply brief, Murnahan argues that the fact that the prosecutor spoke out at the disposition hearing, and that the court imposed the maximum sentence for the one count of attempted rape indicates that the prosecutor and the state engaged in "chicanery" and that his plea was not voluntary and knowing because it was based on the "false promise" that the prosecution would stand silent at the hearing. Murnahan cites a number of case authorities in support of his proposition, but they are all wide of the mark. One set of cases deals with situations where all parties—prosecutor, defense counsel, and the court—had a mistaken belief in the applicable law, and since the accused in those cases entered

his plea based upon the mistaken law, it was easily found not to be voluntary and knowing. *E.g., State v. Engle* (1996), 74 Ohio St.3d 525, 660 N.E.2d 450; and *State v. Caplinger* (1995), 105 Ohio App.3d 567, 664 N.E.2d 959.

A second line of authorities concerns the overturning of a plea or a conviction based upon the gross misconduct of the prosecutors. *E.g., State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203, 206–207 (The prosecutor's pattern of misconduct throughout much of the trial and during closing arguments did deprive the defendant of a fair trial.); *Demjanjuk v. Petrovsky* (C.A.6, 1993), 10 F.3d 338 (prosecutors were found to have exhibited a "reckless disregard for the truth" in withholding exculpatory evidence); *Machibroda v. United States* (1962), 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (defendant's plea induced by promises and threats made by the prosecuting attorney).

To the extent that any part or all of Murnahan's Assignments of Error I, II and III are based upon the acknowledged misconduct of the prosecutor, they are overruled because Murnahan suffered no prejudice by reason of this misconduct.

## II

We now turn to examine the errors alleged to have been committed by the trial court itself, which are scattered through all five of Murnahan's assignments of errors.

### A

Murnahan first charges the trial court erred in failing to inform him that the charge for which he was being sentenced is nonprobational, especially when his trial counsel referred to the probation department at the hearing. The state easily refuted this argument by pointing out that the offense of attempted rape is, in fact, probationable, citing *State v. Long* (1990), 68 Ohio App.3d 663, 589 N.E.2d 437. Thus, no error could possibly have been committed by the trial court in this regard. In his reply brief, Murnahan abandoned this argument. Murnahan cites *State v. Hawk* (1992), 81 Ohio App.3d 296, 610 N.E.2d 1082, for his argument here, but, again, that involved a situation where all parties had a mistaken understanding of the law in that they thought defendant was pleading guilty to a probationable offense when, in fact, he was not.

### B

Murnahan next alleges that the judge of the trial court was not neutral because he allowed the prosecutor to speak and also took judicial notice of something when the court said to Murnahan, "I know you haven't been threatened by anyone to enter this plea." We have already dealt with the lack of

prejudice to Murnahan in the prosecutor's misconduct, and as the state points out to us, the trial court was duty-bound to at least offer the state an opportunity to make a statement pursuant to Canon 3A(4) of the Code of Judicial Conduct, which provides that "[a] judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law * * *."

■ As to the "I know" remark by the court, it was admittedly, as the state says, "inartful," and certainly had the potential to be misleading, but it is quite apparent from reading the transcript of the hearing that the statement by the trial court was perceived and understood by both defense counsel and Murnahan himself as in fact a question, and Murnahan replied to it with an answer by simply saying "No, Your Honor." Furthermore, the court followed all the dictates of Crim.R. 11(C) in questioning Murnahan, and in ultimately determining that he made the plea voluntarily, with understanding of the nature of the charge, and the possible actual penalties involved, and all the rights he was waiving.

Murnahan relies primarily upon cases where the trial court actually participated in the plea bargain process. See, e.g., State v. Byrd (1980), 63 Ohio St.2d 288, 294, 17 O.O.3d 184, 188, 407 N.E.2d 1384, 1388, where the Supreme Court of Ohio held that while it would not find that judicial participation in plea negotiations renders the plea invalid per se, it found the plea in that case to have been given involuntarily because "it appeared as if the judge had joined forces with the prosecution in deciding that appellant was guilty. Any belief that a fair trial could not be had was strengthened by the judge's remarks regarding sentencing and the problems involved in having a jury trial." State v. Walker (1989), 61 Ohio App.3d 768, 573 N.E.2d 1158, and United States v. Barrett (C.A.6, 1992), 982 F.2d 193, also involved trial courts actively participating in and even initiating the plea bargain proceedings. Implicit in the participation by a trial court in plea bargain proceedings is the intimidation of the defendant into accepting a plea bargain, which is fully illustrated in another case cited by Murnahan, State v. Ball (1990), 66 Ohio App.3d 224, 226, 583 N.E.2d 1094, 1095, where the court found that the record demonstrated "that the trial judge went to great lengths to intimidate appellant into accepting a plea bargain."

The cases cited by Murnahan to support his "judicial notice" argument have no relevance to the case before us. Woods v. Beavercreek (1989), 62 Ohio App.3d 468, 575 N.E.2d 1219, concerned the court taking judicial notice of the Ohio traffic manual, and Freitag v. Bill Swad Datsun (1981), 3 Ohio App.3d 83, 3 OBR 96, 443 N.E.2d 988, was about the court taking judicial notice of an administrative regulation when the plaintiff put the court on notice that he was relying on it.

## C

Murnahan also argues that the trial court committed error by advising him that the plea bargain is better than going to trial, and that by advising him, a "slow" person (more about that later), that his counsel had pled him guilty, in effect told him he had no choice but to accept the plea bargain. As to the first assertion, there is nothing in the record whatever that supports Murnahan's claim that the court told him his plea bargain was better than a trial. As to the second assertion, Murnahan relies upon the following from the transcript of the plea hearing: "Now, Mr. Griffin has entered a plea of guilty for you here this morning to this charge." Murnahan fails to note, however, that the transcript continues with the court asking Murnahan: "Is that the plea that you want to answer to this charge here this morning?", to which Murnahan replied: "Yes, Your Honor."

## D

Murnahan's fourth and final assertion of error on the part of the trial court is that since it appointed his counsel to represent him three days after Murnahan had entered a plea of guilty, Murnahan thereby had no attorney when he entered his plea, and therefore his conviction should be overturned. (Murnahan's Assignment of Error V.)

The record shows that attorney James N. Griffin was appointed *nunc pro tunc* on March 27, 1992, retroactive to March 24, 1992, when Murnahan's plea hearing was held. A transcript of the plea hearing positively proves that attorney Griffin was present at the hearing representing Murnahan and actually participated in the proceedings. *"Nunc pro tunc"* means "now for then," and, as the state points out in its brief, is a common device used by all courts to make the record of the proceedings accord with what actually occurred. This power is inherent in the courts, both at law and equity, and is not dependent for its existence on any statute. *Heacock v. Byers* (1929), 120 Ohio St. 621, 169 N.E. 295. This assignment has no merit and is overruled.

## III

We now turn to the final set of errors argued by Murnahan, which consists of an argument for ineffective assistance of his trial counsel based upon four specific alleged errors of omission. In order for Murnahan to prevail on this claim, he must show the attorney errors he complains of are so egregious that his counsel "was not functioning as the 'counsel' that the Sixth Amendment guarantees." *State v. Cook* (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70, 81. The errors must amount to a " 'substantial violation of any of defense counsel's essential duties to his client.' " *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d

373, 379, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627.

Even if Murnahan's right to effective assistance of counsel was violated, he must yet prove that there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Bradley, supra,* 42 Ohio St.3d at 142, 538 N.E.2d at 380, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698. See, also, *State v. Cook, supra,* 65 Ohio St.3d at 524, 605 N.E.2d at 81: "Prejudice means that counsel's errors compromised the reliability of the trial."

In addition, there is a presumption that an Ohio lawyer will provide effective assistance of counsel. "Ohio case law hold that a properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Smith* (1987), 36 Ohio App.3d 162, 163, 521 N.E.2d 1112, 1113, citing *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164.

Murnahan cites four alleged failures of his counsel in his first assignment of error, which he claims prejudiced him. In his reply brief, he alleged eight new charges against his counsel. We need not consider these new allegations, since they were raised in the reply brief and reply briefs are only to be used to rebut arguments or respond to cross-appeals raised in the appellee's brief. An appellant may not use a reply brief to raise new issues or assignments of error. App.R. 16(C). *Professional Opportunities, Inc. v. Xenia Bd. of Appeals* (Nov. 8, 1995), Greene App. No. 95–CA–46, unreported, 1995 WL 655941; *State v. McDaniel* (July 13, 1994), Miami App. No. 93–CA–38, unreported, 1994 WL 371229; *Sheppard v. Mack* (1980), 68 Ohio App.2d 95, 97, 22 O.O.3d 104, 105, 427 N.E.2d 522, 524, fn. 1.

A

Murnahan first claims that he was prejudiced by his counsel's failure to object to the prosecutor's statements at the disposition hearing, which constituted a violation of the plea bargain agreement. We grant that his counsel could possibly have raised an objection as soon as the prosecutor opened his mouth in response to the question from the court, but, even presuming that the court would have silenced the prosecutor immediately (a questionable assumption in view of the Code of Judicial Conduct which has already been mentioned), we fail to see how Murnahan was prejudiced, since we have already noted that the trial court based its sentence on its own investigation of the presentencing report and Murnahan's psychological records. Counsel's error here, if indeed there was one, was certainly harmless.

B

Murnahan next argues that his trial counsel failed to investigate and request a competency hearing, since, as trial counsel stated at the disposition hearing, Murnahan is "a slow person, slow to understand what has been going on in court, slow to understand what the charges against him really were, and the seriousness of those offenses and what his conduct was." Counsel made the statement at the disposition hearing, not the plea hearing, which would have been the appropriate time to request a competency hearing. There is nothing in the transcript of the plea hearing to indicate that Murnahan failed to understand the charges and other issues raised in Crim.R. 11, even though on a couple of occasions he asked them to be explained in more detail. After all, being "slow to understand" does not mean that one does not eventually understand. The situation in this case is a far cry from the situation that existed in *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, cited by Murnahan. In *Ake*, the indigent defendant's sanity at the time of the events was "seriously in question," and because the trial court found his conduct at arraignment and in jail "so bizarre," it ordered a psychiatric examination. In *Ake*, in fact, the defendant was found incompetent to stand trial. There is simply no relationship between the facts of *Ake* and the case before us. Another case relied upon by Murnahan, *Terry v. Rees* (C.A.6, 1993), 985 F.2d 283, which involved a defendant's right to an independent pathologist to challenge the state's position as to the cause of the victim's death, is simply not relevant to the present matter before us.

In *State v. Chapin* (1981), 67 Ohio St.2d 437, 21 O.O.3d 273, 424 N.E.2d 317, the defendant's counsel actually made an assertion four days into the trial that the defendant was not competent to stand trial. The court rejected the assertion without a hearing, and the Supreme Court found that the trial court's action was proper because the defense counsel's assertion was uncorroborated by any objective indications such as, but not limited to, supplemental medical reports or the defendant's own behavior. In the case before us, counsel never suggested anytime that Murnahan was not competent to stand trial, and there are absolutely no indications in the record before us that would even hint otherwise.

The cases cited by Murnahan for his contention of possible incompetency provide him no help. In *State v. Swift* (1993), 86 Ohio App.3d 407, 621 N.E.2d 513, the defendant was held mentally competent even though he was in a state of depression, and the court found he did not evidence any confusion or lack of comprehension. In *State v. Brown* (1992), 84 Ohio App.3d 414, 616 N.E.2d 1179, counsel was found ineffective when he failed to raise the issue of his client's competency, but, in *Brown*, the client was a man who had no recollection of life for a period of several days, and no recollection of the crimes of which he was accused. His last memory is of speaking to his dead mother, who he believes is

buried at a service station in Lakewood. He recalls the need to find a shovel so he can properly bury her at a cemetery in North Royalton. Appellant then "woke up" in the psychiatric unit of the Cuyahoga County Jail. There is no trial tactic or strategy which would reasonably have led trial counsel under such circumstances to fail to enter a plea of not guilty by reason of insanity on behalf of his client. Until such a plea was entered, the trial judge had no obligation even to consider ordering the requested independent evaluation pursuant to R.C. 2945.39(A). *Brown,* 84 Ohio App.3d at 421–422, 616 N.E.2d at 1183–1184.

In *State v. Corethers* (1993), 90 Ohio App.3d 428, 629 N.E.2d 1052, also cited by Murnahan, the defendant had actually been found incompetent to stand trial once, but he was subsequently tried and convicted. The Supreme Court overturned the conviction because, at the second trial, his incompetency was again asserted, but the trial court erred in failing to conduct a competency hearing prior to the trial itself. Again, as in *Brown,* this case bears no relevance to Murnahan's situation.

## C

Murnahan's third claim against his counsel was that counsel was ineffective for failing to investigate and subpoena in teachers from Murnahan's vocational school who "may have had favorable testimony to offer as to defendant-appellant's competency at a trial." The only factual basis for this argument is that Murnahan's counsel stated at the disposition hearing that he heard from "one of his teachers out there that they're concerned about him and his future." There is no indication in counsel's statement that this particular teacher, or for that matter any others, were suggesting that they had any evidence as to either defendant's guilt or innocence or as to defendant's competency. They were only concerned in a humanitarian way about his future. Counsel had no reason to follow through on the teacher's telephone call for evidentiary purposes, and it is obvious counsel mentioned it at the disposition hearing only to obtain from the trial court some sympathy for his client. Murnahan cites cases which concern suppression of exculpatory evidence (*United States v. Bagley* [1985], 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481; *Brady v. Maryland* [1963], 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215) or cases that concern motions to suppress evidence (*Hudson v. South* [1994], 99 Ohio App.3d 208, 650 N.E.2d 172; *State v. Haddix* [1994], 92 Ohio App.3d 221, 634 N.E.2d 690), neither issue being present in the case *sub judice.* The argument that Murnahan's counsel is to be faulted for failing to investigate a teacher for humanitarian concern about his client's future is without merit.

## D

Finally, Murnahan argues that his counsel was ineffective for not stating an objection when the trial court said to Murnahan, "I know you haven't been threatened by anyone to enter this plea," an issue which we have already discussed at length under Part II. Since we already discussed why this statement of the judge was not prejudicial to Murnahan, it is apparent that his counsel was not at fault for not objecting. In summary, we find no evidence that Murnahan's counsel was ineffective in representing him.

All of Murnahan's assignments of error are overruled, and the judgment is affirmed.

*Judgment affirmed.*

GRADY, J., concurs.

FAIN, J., dissents.

FAIN, Judge, dissenting.

Although I agree with the opinion of this court in all other respects, I cannot agree that the state's failure to honor its commitment to remain silent at Murnahan's sentencing, which was part of the plea bargain, has been shown to have been harmless.

The very first comment made by the prosecutor at sentencing referred to the fact that as a result of the plea bargain the charges against Murnahan were reduced in both quality and quantity:

"*Based upon the plea agreement to a lesser offense* and the fact that there was ongoing conduct *and also a plea to a lesser number of offense[s]* I feel that a maximum sentence is appropriate in this situation." (Emphasis added.)

The trial judge's comments upon imposing sentence resonate with the prosecutor's having pointed out that Murnahan had already been the beneficiary of a substantial reduction in the quality and quantity of the charges before the imposition of sentence:

"Well, I've reviewed the presentence investigation as well as all of the psychological records that have been submitted to me by those who've had contact with you, Mr. Murnahan. And in reviewing the accounts that I have here of this activity, very frankly, *it does appear to me that you've been given a substantial consideration or break, I guess is the choice of words that you'd understand most clearly, in allowing you to plead to this one count of attempted rape* because it appears to me from what I see here that this was to some extent an ongoing sexual activity that you were involved in; and I recognize that you blame principally the other party and I suppose he blames you, but in any event,

there is no question about the fact that *there were probably a number of very— much more serious counts available that could have been filed.*" (Emphasis added.)

In view of the similarity between the prosecutor's comment and the trial court's articulated reasoning for imposing the sentence that it did, I am not satisfied that the state's failure to honor its plea bargain had no prejudicial effect. It is possible that the sentence would have been the same, regardless, but I cannot determine that with reasonable probability from this record.

Where the state fails to honor its commitment, as part of a plea bargain, to remain silent at sentencing, one appropriate remedy is to reverse and remand for resentencing. That is what I would do in this case.

In all other respects, I agree with the opinion of this court.