OPINION
On the morning of February 2, 1999, James Bruno left work and walked toward home. Shortly after he arrived, at about 2:30 a.m., Bruno left to visit a friend who lived in the same apartment complex. On his way, an individual, who Bruno identified as defendant Kelvin Aaron, approached him and demanded money. At first, Bruno did not take the defendant seriously, as he recognized the defendant as a patron of the restaurant for which Bruno worked. However, defendant was serious, and the confrontation became violent when defendant pulled a pistol from his coat. As Bruno turned to flee, the defendant struck him on the back of the head knocking him to the ground. According to Bruno, defendant then stood over him and fired a shot into the ground stating, "the next one's yours, now give me the money." (Tr. 36-37.) Bruno complied, throwing approximately fifty-six dollars in cash toward defendant. When the defendant reached for the money, Bruno got to his feet and ran toward a parking lot where he passed out.
As the disturbance was in progress, a call was placed to a 911 operator that two men were fighting and that one of the men had fired a pistol pointed toward the other. The 911 operator dispatched police and paramedics, and upon arrival, the paramedics treated a large laceration on the back of Bruno's head. Bruno then explained to the police what had taken place and showed them where defendant had fired his pistol. Bruno's statement was taken, and afterward, Columbus Police Detective Christina Whittaker compiled a random photographic array, from which Bruno immediately identified defendant as his assailant.
On March 19, 1999, defendant was charged with one count of aggravated robbery, one count of robbery, and one count of felonious assault. Each count was accompanied by an associated firearm specification. Defendant ultimately waived his right to be tried before a jury, and on December 21, 1999, the trial court found defendant guilty of all three counts contained within the indictment. On February 11, 2000, defendant was sentenced to three years' incarceration on counts one and two, two years on count three, and an additional three years for defendant's use of a firearm. Defendant now appeals raising the following two assignments of error:
 [1.] Defense counsel was ineffective when, under these facts, the defense waived jury and tried this cause to the court.
 [2.] The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
In his first assignment of error, defendant argues that his attorney's recommendation to try this matter to the court denied him effective assistance of counsel as guaranteed by the Fifth, Sixth andFourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.
When a convicted defendant alleges that he or she has received ineffective representation, the defendant must show: (1) show that counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's errors prejudiced defendant depriving him or her of a trial whose result is reliable. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052.
In State v. Bradley (1989), 42 Ohio St.3d 136, the Ohio Supreme Court explained that there are countless ways to provide effective assistance in any given case. Id. at 142, quoting Strickland, supra, at 689, 2065. As such, the Supreme Court recognized that "judicial scrutiny of counsel's performance must be highly deferential," such that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional representation. Id. Moreover, even assuming counsel's performance was ineffective, an error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction unless it can be shown that, but for counsel's unprofessional error, the result of the proceeding would have been different.Strickland, supra.
In this case defendant's first assignment of error fails for two reasons. Initially, as this court noted in State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported, defendant cannot claim that he was denied effective assistance of counsel if:
 * * * the record clearly demonstrates that appellant knowingly and voluntarily waived his right to a trial by jury, he signed the form in open court, which was duly filed and an extensive colloquy was conducted with the court sufficient to demonstrate his understanding of his rights and the waiver of the right to a trial by jury. [Id., citing State v. Driggins (Dec. 2, 1999), Cuyahoga App. No. 74940, unreported.]
In the present case, the record contains the following dialogue between defense counsel, the defendant, and the trial court:
 [Defense Counsel]: Your Honor, I've had the benefit of discussing this case with Mr. Aaron. He's 19. His mother's also been with him, so I discussed it, you know, with her. We would at this time choose to — or elect, I should say, to have this case tried to the Court. We will execute a jury waiver form. I think maybe the bailiff is getting that for us.
 [The Court]: Okay. Mr. Aaron, [Defense Counsel] has just — obviously you're sitting here. You can hear him, but he's just indicated to me that you recognize that you have a constitutional right to have a trial by jury, but that you would like to waive having the jury hear the case, give up the jury, and have me decide the case. Is that what you want to do?
[The Defendant]: Yes, Your Honor.
 [The Court]: I want to make sure you understand that there's a good reason for a constitutional right to have a jury decide a case, and that is people from the community, from Columbus, Franklin County, the suburbs, wherever they may be found, people from the community serve on the jury. You would help select those people, along with [Defense Counsel] and * * * the prosecutor.
 The State of Ohio has to prove that you are guilty of a crime beyond a reasonable doubt, and to do that they have to convince all 12 jurors, unanimously, there's no split verdict, there's no ten to two or anything like that. If they don't convince all 12 jurors beyond a reasonable doubt that you're guilty, then you can't be found guilty of a crime.
 On the other hand, if you waive the jury and try it to the judge, give away the jury and the judge decides the facts of the case as well as what the law is, only one person has to be convinced, so that's why we have a right to a trial by jury, but you also have the right to waive the trial by jury and have the judge decide it. So do you understand that?
[The Defendant]: Yes, I understand.
[The Court]: You still would like me to hear the case?
[The Defendant]: Yeah.
 [The Court]: I want to make sure you're comfortable with that, because you know you certainly have the right to have a jury. I'm not trying to tell you what to do by any means. I want to just make sure that you understand that there's a jury or there's no jury. It's up to you. You want to talk to [Defense Counsel] further about it? Why don't you take a few minutes. [Defense Counsel], I may have a plea to do. If you want to take a few minutes and sit down privately with [the Defendant], so you don't need to be — you don't feel rushed or anything.
 [Defense Counsel]: First of all, we've talked about this last time it was pretty much at length and Your Honor, I've had the opportunity as I said, we discussed it, you know, at length with his mother when the court case was set previously.
 This morning it's 11:00 and I have had a few other cases, so we've now had the opportunity off the record to discuss the pros and cons of the jury waiver, and I think he's also talked to his mother for a little bit about it. She's seated behind us in court. And he's gone ahead and executed this jury waiver after further discussion.
[The Court]: Are you comfortable with it, Mr. Aaron?
 [The Defendant]: Yeah, I'm comfortable with it, Your Honor.
* * *
 [The Court]: Thank you very much. And we will have to file this before I have any jurisdiction to proceed, so [my] bailiff will run [this] down. * * *
In addition to the foregoing, the defendant, prosecuting attorney, and the trial judge signed a jury waiver form which provides:
 I Kelvin Aaron defendant in the above cause hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a judge of the court in which said cause may be pending. I fully understand that under the laws of this State, I have a constitutional right to a trial by a jury.
Because defendant knowingly and voluntarily waived his right to a jury trial, he cannot now argue that the recommendation to do so constituted ineffective assistance of counsel. Gray, supra.
Secondly, even if we were to assume that the recommendation to waive a jury trial was professionally unreasonable, in order to demonstrate ineffective assistance of counsel, defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. State v. Murnahan (1996), 117 Ohio App.3d 71, 82.
In support of this assignment of error, defendant reargues the strength of the state's case alleging: (1) that the prosecution only called one eyewitness, the victim; (2) the prosecution did not canvass the apartment complex looking for other eyewitnesses; (3) the prosecution did not track down the 911 caller; and (4) the prosecution did not produce the spent bullet fired from the defendant's pistol. From this, defendant concludes that he would have had a better chance of acquittal if tried to a jury. However, defendant's conclusion is pure unsupported speculation.
Without supporting evidence, the mere claim that a jury would have believed defendant falls far short of establishing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, since: (1) defendant knowingly and voluntarily waived his right to a jury trial, (2) defendant has failed to demonstrate that trial counsel failed to act as counsel guaranteed by the United States and Ohio Consitutions, and (3) defendant has failed to come forward with any evidence showing that he would have been acquitted but for trial counsel's alleged errors, we hereby overrule defendant's first assignment of error.
In his second assignment of error, defendant maintains that his conviction is not supported by legally sufficient evidence, or, in the alternative, that it stands against the manifest weight of the evidence.
Sufficient evidence, and that which is considered to be the manifest weight of the evidence, are legal concepts which are both quantitatively and qualitatively different. Sufficient evidence is evidence which is legally sufficient to support a verdict. In State v. Thompkins (1997),78 Ohio St.3d 380, the Ohio Supreme Court explained:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. * * * [Id. at 386.]
When reviewing a conviction challenged on the basis of the sufficiency of the evidence, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Stated alternatively, the verdict of the trial court will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.
However, the test for reviewing the manifest weight of the evidence is different. In Thompkins, the Court explained:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. [Emphasis sic;id. at 387.]
The question of sufficiency of the evidence presents purely a legal question regarding the adequacy of the evidence. Three witnesses were called during defendant's trial. Those witnesses were the victim, James Bruno, Columbus Police Detective Christina Whittaker, and defendant. Bruno, obviously an eyewitness, testified that defendant approached him as he was walking to a friend's house and demanded money. When he did not immediately hand over his money, defendant struck him with a pistol knocking him to the ground. According to Bruno, defendant then fired a shot toward him, and again demanded that Bruno surrender his money. Viewing this evidence in a light most favorable to the prosecution, we conclude that the evidence and testimony relied upon by the trial court to convict the defendant of aggravated robbery, robbery, and felonious assault, was legally sufficient.
We also conclude that there is sufficient competent, credible evidence to permit reasonable minds to find defendant guilty beyond a reasonable doubt. As noted, two eyewitnesses testified at trial. The trier of fact, the trial court, was in the best position to evaluate the testimony of the witnesses, as well as observe their demeanor.
At trial, defendant took the stand in his own defense and called no other witnesses. Defendant admitted that he knew Bruno from a pizza restaurant that he frequented, and that while he was out driving his friend's car, he saw Bruno walking through an apartment complex. During questioning, defendant offered only evasive responses to questions about his presence in the area at that time of day. According to defendant, he was hanging out, although he was not too sure where, when he happened upon a friend named Wesley. Although defendant considered Wesley a friend, he did not know Wesley's last name, his address, or his phone number, yet claimed to have borrowed Wesley's car to make a "run" to get some clothes. When asked about school and employment, defendant stated that he had been kicked out of school, and that he had no money, no job, and no source of earned income.
When questioned about the confrontation with Bruno, defendant explained that he knew Bruno only from brief conversations the two had at the restaurant where Bruno worked. Although the testimony at trial painted Bruno and defendant as essentially strangers, defendant claimed that Bruno had recently given him free drugs, and that he stopped Bruno on this occasion to ask for more. According to defendant, Bruno then assaulted him demanding payment for the drugs which he had previously given him. Defendant maintains that although he pulled away from Bruno, his first reaction was then to hit Bruno over the back of his head with a bottle in "self defense."
At 2:30 a.m., having just left work, Bruno had a credible reason to be walking through his apartment complex, while defendant did not. Moreover, the 911 call corroborated Bruno's testimony, and, if believed, completely contradicted defendant's testimony that he did not have a gun, and that he only lightly struck Bruno with a bottle on the front of the head in self defense. In fact, Bruno suffered a large laceration on the back right side of his head, which is consistent with defendant's testimony that he is right handed, and Bruno's testimony that the defendant "pistol whipped" him on the back of his head when he tried to run.
Having carefully reviewed the evidence, we are unable to conclude that the trial court clearly lost its way when it found defendant guilty of the charged offenses. Because defendant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, defendant's second assignment of error must also be overruled.
For the foregoing reasons, both of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
KENNEDY and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.