{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Steven Lee Namack, appeals the decision of the Belmont County Court of Common Pleas sentencing him to a term of eight years imprisonment, the maximum allowable sentence for the charged offense, after Namack entered into a plea agreement with the State. We are asked to decide whether the trial court improperly considered a crime neither charged nor proven when sentencing Namack, whether the State's breach of its plea agreement with Namack by commenting at his sentencing hearing, and whether Namack was prejudiced by that alleged breach. We conclude the trial court properly considered that Namack was charged with drug trafficking as a sentencing factor. We also conclude the State breached its agreement not to make any comments at sentencing, but the error was harmless because the record demonstrates the trial court did not rely on the State's comments, but reached its conclusion independently. Thus, we affirm the trial court's decision.
 {¶ 2} The Belmont County Sheriff's Office received a tip from a confidential informant that Namack possessed an ounce of crack cocaine. That same day, Namack was stopped in his vehicle by a number of deputies. He was removed from the vehicle and the deputies found one ounce of crack cocaine in a clear plastic bag near the passenger seat. Namack gave a deputy permission to drive the vehicle back to the Sheriff's Office. Upon arriving at the office, the officers found a plastic container containing fifteen additional grams of cocaine, a pipe and fork with residue, a digital scale with powder residue, and a loaded handgun. The Belmont County Grand Jury subsequently issued an indictment against Namack which charged him with: 1) carrying a concealed weapon in violation of R.C. 2923.12(A), a fourth degree felony; 2) possession of crack cocaine in excess of twenty-five but less than one hundred grams in violation of R.C. 2925.11(A), a second degree felony; and, 3) trafficking in crack cocaine in excess of twenty-five but less than one hundred grams in violation of R.C. 2925.03(A), a first degree felony.
 {¶ 3} Namack filed a motion to suppress and a motion to dismiss for lack of probable cause. After a hearing and briefing by the parties, the trial court denied those motions. Shortly thereafter, Namack entered into a plea agreement with the State. At a hearing to determine if Namack was knowingly and voluntarily changing his plea, the State agreed to nolle counts one and three of the indictment in exchange for a guilty plea to count two of the indictment and an agreement to make full restitution in another criminal case. The State also agreed it would "not make any comments [at sentencing] and the sentencing will be at the discretion of the court." In the signed plea agreement, which was filed two weeks after that hearing, the State agreed it would "not make any specific recommendation and sentencing will be at the discretion of the court." After engaging in a colloquy with Namack, the trial court accepted his guilty plea and set the matter for sentencing.
 {¶ 4} At sentencing hearing, defense counsel made their arguments to the court. The trial court then asked the State for comments during which the following exchange occurred:
 {¶ 5} "MR. PIERCE: Your Honor, I don't want to say anything that's not in the plea agreement. So if I do say something that would inadvertently contradict that, obviously, the court should rely on the plea agreement. I understand, and I am not — I'm not unmindful of the fact that the defendant is very fortunate that he has a loving family and caring friends. And that, I'm sure, will serve him well when his period of incarceration is over. It's — these cases do cause suffering to the family, but we can't be unmindful of the fact that the context of these offenses involve some dealing, some selling. Although that's not the particular charge —
 {¶ 6} "MR. BLAKESLEE: I object. I object. I object. And the reason for the objection is that the terms and conditions of the negotiated plea were that the State would not make any recommendations as to the sentence.
 {¶ 7} "THE COURT: Okay. Well, I don't hear a recommendation as of yet.
 {¶ 8} "MR. PIERCE: I'm just commenting on the —
 {¶ 9} "THE COURT: He's just talking about the context — one moment. He's talking about the context of the charges that — or the charge that this defendant has plead [sic] to. And Mr. Pierce, the court is well aware that the State is not able to make a recommendation, but I'm not going to prohibit you from commenting further.
 {¶ 10} "MR. PIERCE: All I'm going to say is that we can't be unmindful and that there is a lot of suffering caused on these kinds of cases. And you know, once the defendant looses [sic] his ability to make rational decisions because of the addiction, that disease becomes contagious if you pass the drug on to other people. That's the gravity of the harm the State is interested in. So I just — I know I don't need to remind the court not to be swept up in sympathy, but that's the point I wanted to make, that I mean, we can be sympathetic to the suffering of the man's family, but we can't be unmindful of the criminal act that was committed.
 {¶ 11} "THE COURT: All right. Thank you Mr. Pierce."
 {¶ 12} Following this exchange, Namack never moved to withdraw his plea and, after he addressed the trial court, it imposed sentence upon him. When giving the reasons for imposing its sentence, the trial court stated as follows:
 {¶ 13} "Considering offender's admissions in the presentence report as to dealing crack, the large amount of crack in his possession, combined with the additional drug paraphernalia found in the vehicle, as well as the loaded Barretta nine millimeter handgun ready at hand, this court infers that crack was not for personal use but that the offender was a heavy trafficker in crack cocaine.
 {¶ 14} "* * *
 {¶ 15} "Though drug abuse can be a victimless crime, the amount of highly addictive crack cocaine in his possession at the time of his arrest, the accompanying paraphoniae [sic], including the firearm, as well as the circumstances surrounding his arrest and his subsequent attempt to flee from the jurisdiction of this court are all indicative of his serious intent to spread his drug poison to others. Therefore, it demeans the seriousness of this offense for the court to consider the imposition of a minimum mandatory sentence, nor would consideration of such a sentence adequately protect the public, as this offender poses a great likelihood of committing future crimes. And it would send an inappropriate message of tolerance for such criminal activity and this court will not send such a message."
 {¶ 16} The trial court went on to sentence Namack to a term of eight years, the maximum allowable by law.
 {¶ 17} Namack's first assignment of error asserts:
 {¶ 18} "Defendant-Appellant's sentence was not supported by the record and contrary to law when the fundamental fairness of the sentencing proceeding was impaired by the trial judge's consideration of a crime neither charged nor proven, viz., that Defendant-Appellant trafficked heavily in crack cocaine."
 {¶ 19} Namack argues the trial court improperly sentenced him by basing the sentence on a crime neither charged nor proven. In stating its reasons for imposing the maximum sentence, the trial court considered whether Namack was engaged in drug trafficking. However, he pleaded guilty to drug possession, not drug trafficking.
 {¶ 20} As Namack points out, Ohio's appellate courts have held a trial court may not consider a crime neither charged nor proven when it is sentencing an offender. See State v. Gipson (May 20, 1999), 8th Dist. No. 75369; State v. Goodman (Jan 26, 1998), 5th Dist. No. 1997CA00171;State v. Longo (1982), 4 Ohio App.3d 136, 4 OBR 228, 446 N.E.2d 1145, paragraph two of the syllabus. However in this case, Namack was charged with drug trafficking. When the trial court considered this crime during sentencing, it was considering a crime originally charged.
 {¶ 21} Apparently, Namack's argument is based on a misunderstanding of the underlying facts in this case. In the recitation of the facts of the case in his brief, Namack states he "was indicted and charged with three felonies, Possession of Drugs with Specification, a violation of R.C. 2925.11(A) and (C)(3)(d) and a felony of the second degree; Possession of Drugs with Specification, a violation of R.C.2925.11(A) and (C)(3)(e), and a felony of the first degree; and Carrying a Concealed Weapon, a violation of R.C. 2923.12, and a felony of the fourth degree."
 {¶ 22} This is a misstatement of the facts. The indictment charges Namack with a concealed weapon charge, drug possession, and drug trafficking. Accordingly, the trial court did not err by considering the original charge when sentencing Namack. His first assignment of error is meritless.
 {¶ 23} Namack's second assignment of error asserts:
 {¶ 24} "The prosecuting attorney broke the terms and conditions of the negotiated plea agreement by suggesting that the Defendant-Appellant was a trafficker in crack cocaine, thus implicitly recommending to the trial court that the Defendant-Appellant not receive the mandatory minimum sentence."
 {¶ 25} Namack argues the prosecutor violated the terms of the plea agreement by suggesting that Namack was a drug trafficker, thus implicitly recommending more than the minimum sentence to the trial court. A plea agreement is generally "contractual in nature and subject to contract-law standards." State v. Butts (1996), 112 Ohio App.3d 683,686, 679 N.E.2d 1170. Plea agreements should be construed strictly against the government. State v. Ford (Feb. 18, 1998), 4th Dist. No. 97 CA 32, at 3; United States v. Fitch (C.A.6, 2002), 282 F.3d 364, 367. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York
(1971), 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427. "When an allegation is made that a plea agreement has been broken, the defendant must merely show that the agreement was not fulfilled." State v. Legree
(1988), 61 Ohio App.3d 568, 571, 573 N.E.2d 687. A prosecutor's failure to comply with the terms of a plea agreement may, in some circumstances, render a defendant's plea involuntary and undermine the constitutional validity of a conviction based upon that plea. Id.; Blackledge v.Allison (1977), 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136.
 {¶ 26} It is the duty of the trial court as a trier of fact to determine whether there has been compliance with a plea agreement. Statev. Curry (1976), 49 Ohio App.2d 180, 183, 3 O.O.3d 227, 359 N.E.2d 1379. Ordinarily, it is within the sound discretion of the trial court to determine a defendant's remedy when the State has breached a plea agreement. State v. Mathews (1982), 8 Ohio App.3d 145, 146, 8 OBR 202,456 N.E.2d 539; Santobello at 263. When exercising this discretion, the trial court has two possible remedies to chose from which depend upon the circumstances of the particular case, either specific performance of the agreement or withdrawal of the plea. Id.; Peavy v. United States (C.A.6, 1994), 31 F.3d 1341, 1346.
 {¶ 27} In this case, Namack never moved to withdraw his plea due to the prosecution's actions. See contra Santobello, supra; State v.Camuso (Oct. 26, 1999), 7th Dist. No. 94-CA-219 (Defendant moved to withdraw his plea after prosecution allegedly violated the plea agreement). Because Namack chose not to withdraw his plea, the only remedy he can seek from this court is specific performance, i.e. a remand to the trial court for re-sentencing in accordance with the plea agreement. See State v. Murnahan (1996), 117 Ohio App.3d 71,689 N.E.2d 1021; State v. Ford (Feb. 18, 1998), 4th Dist. No. 97 CA 32 (If the State breaches a valid plea agreement, the trial court may allow the defendant to withdraw his plea).
 {¶ 28} In order for Namack to successfully challenge his sentence, we must first determine the nature of the prosecutor's promise, i.e. whether the prosecution actually breached the plea agreement. State v. Hess (Dec. 24, 1991), 4th Dist. No. 515, at 9, citingSantobello; United States v. Corsentino (C.A.2, 1982), 685 F.2d 48, 51. Thus we must examine the language used by the prosecutor when entering into the plea agreement. Only then can we determine whether the prosecutor actually breached the plea agreement.
 {¶ 29} In this case, the State agreed it would "not make any comments" at sentencing during Namack's change of plea hearing. However, in the plea agreement signed two weeks after that hearing, the State agreed it would "not make any specific recommendation and sentencing will be at the discretion of the trial court." These are interpreted as two distinct promises, and that distinction is crucial. The difference between the two promises had been articulated by the United States Third Circuit Court of Appeals.
 {¶ 30} "In [a previous case] the Government made a broad unqualified promise to take no position whatsoever as to sentencing and thus gave up its right to fair comment as to the severity of the sentence and whether the defendant should undergo imprisonment. Here, the Government has specifically promised only not to make recommendation as to the sentence. The difference between the two terms is elementary, for the promise not to recommend is narrow, speaking only as to the sentence to be imposed, whereas a promise to take no position speaks to no attempt at all to influence the defendant's sentence." United States v. Miller
(C.A.3, 1977), 565 F.2d 1273, 1275; see also State v. Hannah (Dec. 20, 1985), 6th Dist. No. L-85-189; see contra Hess, supra (holding an agreement not to make any recommendation is the equivalent of an agreement to make no comment to the sentencing judge).
 {¶ 31} When a trial court accepts a criminal defendant's guilty plea, the court is, among other things, to ensure the defendant understands the effect of his guilty plea. Crim.R. 11(C)(2)(b). Here, when the trial court accepted Namack's guilty plea at the time of the hearing, it was understood that one of the effects of his guilty plea would be that the State would make no comment at sentencing. That promise, and not the promise merely to make no specific recommendation, made after the fact, was a term of Namack's plea agreement.
 {¶ 32} As the State's promise was to make no comment at sentencing, the State promised not to do anything that would influence the defendant's sentence. During the sentencing hearing, the prosecution presented facts and arguments bearing upon sentencing. The State then asked the court to bear in mind the gravity of the harm caused by the offenses Namack was originally charged with. The State's comments were clearly an attempt to influence Namack's sentence. The State breached its promise to make no comments during the sentencing hearing. The State cannot rely upon the "agreement" not to make a recommendation that was signed after Namack had already been sentenced.
 {¶ 33} Although the trial court erred by allowing the State to comment during the sentencing hearing, this is not necessarily reversible error. For example, in Camuso, the State agreed to stand silent at the time of sentencing, except to correct any flaws or erroneous statements as to the case facts or as to the defendant's background. However, the State proceeded to deliver an eleven page case summary to the trial court prior to the sentencing hearing, thus breaching the plea agreement. This court found no prejudice because the trial court stated on the record that it had not read the case summary. "[T]he essential part of the plea agreement was kept and * * * the prosecuting attorney's error, if any, was harmless because the trial judge did not consider the summary when it rendered its sentence." Id. at 4, citing State v. Gessner (Aug. 14, 1996), 7th Dist. No. 94 C.A. 225.
 {¶ 34} Likewise, in Murnahan the prosecutor breached the negotiated plea agreement by recommending a maximum sentence rather than remaining silent at the hearing. The trial court proceeded to impose the maximum sentence. The Second District affirmed the trial court's decision because it did not rely on the prosecutor's improper comments when making its decision.
 {¶ 35} "It is quite obvious, however, that the court did not base its sentence upon the remarks of the prosecutor (uncalled for as they were), but upon the court's own review of the presentence investigation and Murnahan's psychological records. The court noted that Murnahan had `been given a substantial consideration or break,' allowing him to plead guilty to one count of attempted rape when, in fact, it seems apparent `that there were probably a number of very-much more serious counts available that could have been filed.'" Id. at 78.
 {¶ 36} As these cases demonstrate, when a prosecutor violates the terms of a plea agreement by attempting to influence the sentence a trial court imposes upon an offender, an appellate court will affirm the trial court's decision imposing the sentence upon that offender if the record demonstrates the court's decision is based upon its own review of the record before it. This is because nothing binds the court to the recommendations or statements given by the prosecutors at sentencing. SeeState v. Burton (Aug. 11, 2000), 6th Dist. No. WD-00-010 (finding the defendant was not prejudiced by the State's breach of its agreement not to make a recommendation because the offender knew no recommendations were binding upon the court).
 {¶ 37} In this case, the trial court stated its factual conclusions were drawn from the underlying facts in this case as well as the pre-sentence report wherein Namack admitted he dealt crack cocaine. Because the trial court arrived at its conclusion independently by relying on the information it could glean from the record, Namack was not prejudiced by the breach of the plea agreement. Thus, his second assignment of error is also meritless.
 {¶ 38} Because each of Namack's assignments of error are meritless, the decision of the trial court is affirmed.
Donforio, J., concurs.
Waite, J., concurs.