[Cite as *State v. Hawk*, 2024-Ohio-1190.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0727 |
| | : | |
| DUSTIN J. HAWK | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 29, 2024

. . . . . . . . . . .

JOHN A. FISCHER, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Dustin J. Hawk pled guilty in the Clark County Court of Common Pleas to attempted murder, a felony of the first degree, with a firearm specification. The trial court sentenced him to an indefinite term of a minimum of 8 years to a maximum of 12 years in prison, plus three years for the firearm specification. Hawk appeals from his conviction, alleging errors during the plea and sentencing hearings. For the following reasons, the

trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} Shortly after 5:00 p.m. on June 12, 2022, A.S. saw a gold Pontiac driving recklessly down Hoppes Street. He went into the street with his hands up and yelled at the driver to slow down. The vehicle passed him, turned around at the end of the block, and came back toward him. As the Pontiac pulled up next to him, the driver pointed a handgun at him and shot him in the right chest area. The police arrived soon thereafter, and the victim and multiple witnesses described the shooter and the vehicle from which he had fired his weapon. Within minutes, other police officers located the gold Pontiac; the driver, who fit the witnesses' description of the shooter, was identified as Hawk. Upon searching the car, the officers found shell casings, a loaded handgun with three bullets in the magazine, and additional ammunition. Hawk was 17½ years old when the incident occurred.

{¶ 3} The matter initially proceeded in juvenile court. On September 9, 2022, the juvenile court ordered that the matter be transferred to the general division of the common pleas court for prosecution as an adult.

{¶ 4} Hawk was indicted on six counts: (1) attempted murder, a first-degree felony; (2) felonious assault, a second-degree felony; (3) discharge of a firearm on or near prohibited premises, a first-degree felony; (4) carrying a concealed weapon, a fourth-degree felony; (5) improper handling of firearms in a motor vehicle, a fourth-degree felony; and (6) inducing panic, a fourth-degree felony. Four of the charges included three-year and five-year firearm specifications. The indictment also sought forfeiture of the Ruger

LCP .380 handgun found in the vehicle.

{¶ 5} Approximately a month later, Hawk pled guilty to attempted murder with a three-year firearm specification and agreed to forfeit the gun listed in the indictment. In exchange, the State agreed to dismiss the other counts and specifications. The parties further agreed to a presentence investigation and that, although the State would not remain silent at sentencing, it would not recommend a specific prison term. The trial court accepted the guilty plea and scheduled a sentencing hearing for December 21, 2022.

{¶ 6} At the sentencing hearing, the trial court initially told Hawk that he would be sentenced to a minimum of 7 years to a maximum of 10½ years in prison, as well as an additional three years for the firearm specification. In its next statement, the court said, "This means that the maximum sentence would be the 3 years plus the 8 years on a minimum to a maximum of 12 years. The 8 to 12 years is not mandatory." The court notified Hawk that, after serving the three years, it would be presumed that he would be released when he reached eight years in prison. It further stated that the Ohio Department of Rehabilitation and Corrections could rebut the presumption and hold him for an additional period of time, but he must be released upon serving 12 years.

{¶ 7} Defense counsel did not object to the apparent change in the court's oral sentence at the hearing. However, before court adjourned, the court reporter apparently raised the issue with the trial court off-the-record. The court then added: "The question is whether or not I changed from 7 and a half [sic] to 8 and 12. I did. That was a mistake. That would have been a minimum of 7 to a maximum of ten and a half. Thank you,

everybody. Court's in recess." The trial court's written judgment entry imposed the minimum of 8 years to a maximum of 12 years in prison.

{¶ 8} Hawk appealed from his conviction. His original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he could find no potentially meritorious issues for review. After that filing, this court held that we would no longer accept *Anders* briefs, nor would we permit appellate counsel to withdraw on the basis that an appeal is frivolous. *State v. Holbert*, 2d Dist. Montgomery No. 29704, 2023-Ohio-3272, ¶ 26. We therefore rejected the *Anders* brief in this case and appointed new counsel "to represent appellant and to satisfy the alternative procedure set forth in *Holbert*, including the filing of a merit brief."

{¶ 9} Hawk now raises two assignments of error, which we will address in turn.

## II. Validity of Hawk's Plea

{¶ 10} In his first assignment of error, Hawk claims that the trial court failed to comply with Crim.R. 11, and therefore his guilty plea was not made knowingly, intelligently, and voluntarily. He points to a portion of the plea colloquy where the court misidentified the degree of his offense as a felony of the fourth degree.

{¶ 11} "Due process requires that a defendant's plea be knowing, intelligent, and voluntary," and compliance with Crim.R. 11(C) ensures the constitutional mandate is followed. *State v. Brown*, 2d Dist. Montgomery No. 28966, 2021-Ohio-2327, ¶ 8. Crim.R. 11(C)(2) mandates that a trial court may not accept a guilty plea without first addressing the defendant and:

(a) Determining that the defendant is making the plea voluntarily, *with*

*understanding of the nature of the charges and of the maximum penalty involved*, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

(Emphasis added.) Crim.R. 11(C)(2); *State v. Sheppeard*, 2d Dist. Clark No. 2022-CA-69, 2023-Ohio-3278, ¶ 9.

{¶ 12} "The trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of constitutional rights." *State v. Russell*, 2d Dist. Clark No. 2010-CA-54, 2011-Ohio-1738, ¶ 7, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31. However, the trial court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *Id.* at ¶ 8, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." (Citations omitted.) *Nero* at

108. In reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 12.

{¶ 13} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Id.* at ¶ 16, citing *Nero* at 108. The test for prejudice is "whether the plea would have otherwise been made." *Id.* There are two exceptions to this general rule, neither of which is relevant here. *See Sheppeard* at ¶ 13.

{¶ 14} At the beginning of the plea hearing, the trial court reiterated that Hawk had been indicted on six charges, the first being attempted murder, a felony of the first degree. It then confirmed with counsel that the plea agreement reflected the parties' agreement. The prosecutor placed on the record facts supporting the attempted murder charge, and defense counsel indicated that Hawk would be withdrawing his not guilty plea and entering "a plea of guilty to the charge as the Court has recited."

{¶ 15} During the plea colloquy, Hawk also acknowledged that he had reviewed, understood, and signed the plea form, which identified the charge as "attempted murder/ 3 year gun spec," in violation of R.C. 2903.02(A) and R.C. 2923.02(A), a first-degree felony. The form stated the maximum sentence as "11-16.5 years (plus 3 yr mandatory gun specification)" and a maximum fine of $20,000, none of which was mandatory.

{¶ 16} The trial court informed Hawk that "[t]his plea is to attempted murder with a three-year firearm specification. The attempted murder is a felony of the first degree and

it carries an indefinite sentence. Do you understand that?" Hawk responded affirmatively. The court explained what an indefinite sentence meant, and Hawk again stated that he understood. It continued: "As a felony of the first degree, the range for the minimum term is 3 years to 11 years and the Court determines what that minimum term will be." The court then explained the longest possible maximum term that Hawk faced, namely 16½ years in prison, and that he would receive a three-year term for the firearm specification, which would be served consecutively to the indefinite sentence. The court explained the rebuttable presumption regarding his minimum sentence and that he was required to be released upon the completion of the maximum sentence. The trial court also notified Hawk of his post-release control obligation and the consequences of violating it.

{¶ 17} Later in the plea hearing, the court questioned Hawk about whether he was entering his plea voluntarily and whether he understood that, by pleading guilty, he was admitting to the truth of the facts presented by the prosecutor. At one point, the court asked, "You admit that you committed the offense of attempted murder as a felony of the first degree. Do you understand that?" Hawk replied, "Yes, Your Honor." The court next reviewed Hawk's constitutional rights with him.

{¶ 18} Before accepting Hawk's plea, the trial court asked defense counsel if he was satisfied that Hawk understood the nature and elements of the offenses that would have to be proven if he were to go to trial. Counsel responded, "Your Honor, yes. Mr. Hawk and I have discussed these things at length on more than one occasion, and he understands all of the various elements that the Court just described, yes." The court

then had the following exchange with Hawk:

THE COURT: Mr. Hawk, at this time are you telling the Court that you want to waive all the rights we've gone over, give them up for the purposes of this case, and plead guilty to the charge of attempted murder, a felony of the *fourth* degree with a three-year firearm specification, and agree to forfeit the firearm listed in the forfeiture specification?

DEFENDANT: Yes, Your Honor.

THE COURT: Then I find the defendant's knowingly, voluntarily, and intelligently waived his rights and has entered a plea of guilty to attempted murder, a felony of the *first* degree, a plea of guilty to the three-year firearm specification, and has admitted to the forfeiture specification regarding the firearm. * * *

(Emphasis added.)

{¶ 19} On this record, the trial court substantially complied with its obligations under Crim.R. 11(C)(2)(a) when accepting Hawk's plea to attempted murder, a first-degree felony.   The trial court's advisements throughout the plea hearing, as well as the information on the plea form, indicated that Hawk was entering a plea to attempted murder as a first-degree felony.   The court notified Hawk of the maximum penalty involved for that degree of offense, and Hawk admitted that he had committed the offense of attempted murder as a felony of the first degree.   While the trial court clearly misspoke when it ultimately asked Hawk whether he was pleading guilty to attempted murder as a fourth-degree felony, there is no indication that this single misstatement affected Hawk's

understanding of the nature of the offense or the maximum penalty involved.

**{¶ 20}** Hawk's first assignment of error is overruled.

### III. Hawk's Prison Sentence

**{¶ 21}** In his second assignment of error, Hawk claims that the trial court erred in sentencing him to an indefinite term of a minimum of 8 to a maximum of 12 years in prison after originally informing him that his sentence would be 7 to 10½ years in prison.

**{¶ 22}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences."  *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).

**{¶ 23}** In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2).  *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9.  Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.  *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.  "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

**{¶ 24}** "When reviewing felony sentences that are imposed *solely* after considering

the factors in R.C. 2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported by the record." (Emphasis added.) *State v. McDaniel*, 2d Dist. Darke No. 2020-CA-3, 2021-Ohio-1519, ¶ 11, citing *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18; *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 26-29.

{¶ 25} However, we may review whether a sentence was imposed based on impermissible considerations, namely considerations that fall outside of R.C. 2929.11 and R.C. 2929.12. *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68 (trial court impermissibly increased the defendant's sentence following his angry, profanity-laced in-court tirade after the announcement of his sentence.) "[W]hen a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Id.* at ¶ 22.

{¶ 26} On appeal, Hawk asserts that the trial court imposed a prison sentence of a minimum term of 7 years to a maximum of 10½ years and that it was not permitted to alter its original sentence. He cites to case law holding that a trial court lacks the authority to reconsider its final judgment in a criminal case: *State v. Watkins*, 10th Dist. Franklin No. 20AP-313, 2020-Ohio-5203, ¶ 15, and *State v. Boles*, 2d Dist. Montgomery No. 23037, 2011-Ohio-3720, ¶ 34.

{¶ 27} Indeed, a trial court lacks authority to reconsider its own valid final judgment in a criminal case, subject to two exceptions: (1) the court retains jurisdiction to correct a void sentence, and (2) the court may correct clerical errors in its judgment pursuant to Crim.R. 36. *State v. Tolson*, 2d Dist. Greene No. 2022-CA-31, 2023-Ohio-3734, ¶ 28;

*see also State v. Harris*, 2d Dist. Montgomery No. 29379, 2023-Ohio-648, ¶ 106.

**{¶ 28}** However, the trial court had not issued a final judgment when it altered Hawk's sentence. It is well established that "a court speaks only through its journal entries, not through its oral pronouncements." *State v. Smith*, 2d Dist. Montgomery No. 26217, 2015-Ohio-700, ¶ 10. *See, also, e.g., State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 39, citing *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 15. Accordingly, the court had the authority to change Hawk's sentence at the sentencing hearing, although *Bryant* makes clear that it could not do so for impermissible reasons.

**{¶ 29}** In this case, the trial court addressed the change in Hawk's sentence at the end of the sentencing hearing. It acknowledged that it had increased its originally-stated sentence to a sentence of "8 and 12" and characterized its original sentence as "a mistake." The trial court had the discretion to impose an indefinite sentence of a minimum of 8 years to a maximum of 12 years in prison, and the record demonstrates that the trial court intended to do so based on the circumstances of Hawk's case. Nothing suggests that the trial court increased Hawk's sentence based on impermissible factors or considerations. Rather, it appears that the trial court initially misspoke, and its ultimate sentence was the one it originally intended. Accordingly, we find no error in the court's sentencing Hawk to a minimum of 8 years to a maximum of 12 years in prison.

**{¶ 30}** Hawk's second assignment of error is overruled.

### IV. Conclusion

**{¶ 31}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.