[Cite as *State v. Guy*, 2024-Ohio-1902.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 29920 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 01840 |
| | : | |
| DAMARCUS KRISHON BUNCH GUY | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 17, 2024

. . . . . . . . . . .

JOHNNA M. SHIA, Attorney for Appellant

MATHIAS H. HECK, JR., by NATHAN B. VANDERHORST, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Damarcus Krishon Bunch Guy appeals from a judgment of the Montgomery County Common Pleas Court convicting him following his guilty pleas to one count each of attempted rape and abduction. On appeal, Guy challenges whether his guilty pleas were knowing, intelligent, and voluntary. For the

following reasons, the trial court's judgment will be affirmed.

## I. Procedural History and Facts

{¶ 2} On July 6, 2023, Guy was indicted by a Montgomery County grand jury on one count of aggravated burglary (physical harm), in violation of R.C. 2911.11(A)(1), a felony of the first degree; two counts of attempted rape (by force), in violation of R.C. 2907.02(A)(2) and R.C. 2923.02(A), felonies of the second degree; one count of kidnapping (felony or flight-safe release), in violation of R.C. 2905.01(A)(2), a felony of the second degree; one count of kidnapping (sexual activity-safe release), in violation of R.C. 2905.01(A)(4), a felony of the second degree; one count of abduction (restrain), in violation of R.C. 2905.02(A)(2), a felony of the third degree; one count of abduction (restrain/sexual motivation), in violation of R.C. 2905.02(A)(2) and (B), a felony of the third degree; three counts of gross sexual imposition (by force), in violation of R.C. 2907.05(A)(1), felonies of the fourth degree; and one count of disrupting public services (emergency officials), in violation of R.C. 2909.04(A)(3), a felony of the fourth degree.

{¶ 3} On August 21, 2023, Guy appeared in court to enter a negotiated guilty plea. Pursuant to a purported agreement with the State, Guy intended to enter guilty pleas to one count of attempted rape (by force) and one count of abduction (restrain/sexual motivation) in exchange for the State's agreeing to dismiss the remaining counts and "an agreement to a sentencing range of four to six years." Tr. 6. Because the attempted rape charge required an indefinite sentence, the court advised Guy that he would receive both a minimum and a maximum term. The minimum term was explained as a range of four to six years per the agreement of the parties so long as he cooperated and there

were no problems between the time of the plea and sentencing. The court explained that after the court picked the minimum sentence, the maximum term would be the total of the minimum term plus 50 percent of the minimum term. Additionally, the trial court reviewed with Guy both his Tier II and Tier III sex offender registration requirements, mandatory post-release control, and his constitutional rights. However, the trial court noticed that Guy appeared reluctant to enter a guilty plea and continued the hearing to a later date in order for Guy to discuss his options with his attorney.

{¶ 4} On August 23, 2023, Guy again appeared in court to enter negotiated guilty pleas to one count of attempted rape (by force) and one count of abduction (restrain/sexual motivation) in exchange for the State's agreeing to dismiss the remaining counts with "an agreed four- to six-year minimum range on sentencing." *Id.* at 21. The trial court informed Guy that, due to the indefinite sentencing scheme, the maximum possible prison sentence for attempted rape was 12 years. Pursuant to the agreement, however, the court explained that the longest minimum sentence for indefinite sentencing would be 6 years and the longest maximum indefinite sentence would be 9 years. The trial court informed Guy that, for the abduction charge, he faced up to a maximum of 36 months in prison but was eligible to instead receive community control sanctions for a period of up to 5 years. The trial court again reviewed Guy's Tier II and Tier III sex offender requirements, mandatory post-release control, and all of his constitutional rights. Guy was further advised that the court could impose court costs, restitution, a fine of up to $15,000 for the attempted rape charge and up to $10,000 for the abduction charge, and a discretionary fine of $50-500 for the Rape Crisis Program Trust. Following the trial

court's colloquy, Guy entered guilty pleas, the trial court ordered a presentence investigation report, and the trial court scheduled a date for the sentencing hearing.

{¶ 5} On September 5, 2023, the parties appeared for sentencing. Prior to imposing sentence, the trial court reviewed a couple of potential discrepancies. The trial court explained that although Guy had been orally informed that his post-release control for each offense was a mandatory term of five years after his release from prison, the plea form for the attempted rape erroneously stated "up to five years." The parties reviewed the discrepancy on the record and signed a plea form that corrected the term of post-release control. Additionally, the trial court informed Guy that although the plea form stated that his prison term for the attempted rape was mandatory, the trial court had not specifically orally informed Guy of that fact during his plea hearing. The trial court verified that Guy understood that the prison term was mandatory and then asked if that changed anything about his plea or if he had any questions about it. Guy responded in the negative and, further, that he did not have any questions about it.

{¶ 6} Following statements from defense counsel, the State, and Guy, the trial court imposed a mandatory prison term of a minimum of 6 years to a maximum of 9 years for attempted rape, which was ordered to be served concurrently to a stated prison term of 36 months for abduction. Guy was designated a Tier III sex offender for attempted rape and a Tier II sex offender for abduction. He was ordered to serve a mandatory period of 5 years of post-release control for each of his offenses following his prison term. The trial court also imposed court costs and a $500 fine to the Rape Crisis Program Trust Fund.

{¶ 7} Guy timely appealed and raises the following single assignment of error: The trial court erred when it accepted Guy's plea because it was not knowingly, intelligently, nor voluntarily entered.

{¶ 8} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. Crim.R. 11(C) governs the acceptance of guilty pleas by the trial court in felony cases. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "A trial court's compliance with Crim.R. 11(C) ensures that a plea comports with due process." (Citations omitted.) *State v. Perdue*, 2022-Ohio-722, 185 N.E.3d 683, ¶ 10 (2d Dist.). Crim.R. 11(C)(2) provides that a trial court should not accept a guilty plea without first addressing the defendant personally and:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands

that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶ 9}** "In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Hawk*, 2d Dist. Clark No. 2023-CA-2, 2024-Ohio-1190, ¶ 13, citing *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 16. There are two exceptions to this general rule to show prejudice: 1) if a trial court fails to explain the Crim.R. 11(C)(2)(c) constitutional notifications, or 2) if the trial court *completely* fails to comply with a portion of the nonconstitutional notifications contained in Crim.R. 11(C)(2)(a) or (b). *Dangler* at ¶ 14-15. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Therefore, if a trial court "fails to fully cover other 'nonconstitutional' aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea." *Dangler* at ¶ 14, citing *Veney* at ¶ 17. "The test for prejudice is 'whether the plea would have otherwise been made.' " *Id.* at ¶ 16, quoting *Nero* at 108.

**{¶ 10}** When reviewing a trial court's compliance with Crim.R. 11(C) during the plea

colloquy, the questions to be asked are: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

## II.    Analysis

{¶ 11} According to Guy, the trial court completely failed to comply with Crim.R. 11(C)'s nonconstitutional notifications because it did not personally address Guy concerning the maximum penalty involved prior to accepting his plea.  Specifically, Guy alleges that the trial court failed to advise Guy of the mandatory nature of his prison sentence for attempted rape and that he was not eligible for community control sanctions for that offense.   Guy also contends that he was reluctant to enter the plea and, therefore, his plea was not knowingly, intelligently, and voluntarily entered.   The State responds that the trial court did not completely fail to inform Guy of his nonconstitutional notifications in Crim.R. 11(C)(2)(a) and, because Guy did not demonstrate prejudice, the trial court's judgment must be affirmed.

{¶ 12} The primary issue in dispute is whether the trial court's plea hearing amounted to a complete failure to comply with Crim.R. 11(C)(2)(a), which would relieve Guy of his burden to show prejudice in order to vacate his guilty pleas.   We conclude that the trial court did not completely fail to comply with the nonconstitutional notifications contained in Crim.R. 11(C)(2)(a).   We further conclude that Guy failed to demonstrate

that he suffered prejudice from the trial court's failure to fully cover the nonconstitutional aspects of Crim.R. 11(C)(2)(a) during the plea colloquy.

{¶ 13} On August 23, 2023, Guy entered negotiated guilty pleas that were placed on the record in open court. In exchange for Guy's guilty plea to one count each of attempted rape and abduction, the State agreed to dismiss the remaining charges against him and recommend an agreed prison sentence of a minimum sentencing range of four- to six-years. The charges to which Guy agreed to plead guilty were read into the record before Guy entered his guilty pleas.

{¶ 14} Before accepting his guilty pleas, the trial court notified Guy that the attempted rape charge carried an indefinite sentence, meaning that he would receive both a minimum prison term and a maximum prison term for that offense. Guy was informed that he could be sentenced to a minimum of 2 years up to a minimum sentence of 8 years, which would result in a maximum sentence of 12 years, for attempted rape. He was also told that he could be sentenced up to 36 months in prison for abduction, which could be ordered to be served concurrently or consecutively to the attempted rape sentence. The trial court further explained that due to the agreement of the parties, the longest minimum sentence he could serve would be 6 years, such that the longest maximum sentence he could serve would be 9 years. The trial court explained that because he was going to be sentenced to an indefinite sentence, there was a presumption that he would be released at the end of the minimum sentence imposed, but his sentence could be extended based on his conduct in the institution.

{¶ 15} Because Guy was on post-release control at the time of his plea, he was

informed that the court could terminate his post-release control and impose a consecutive prison term for the post-release control violation. Guy was also notified that the trial court could impose court costs, restitution, or a financial sanction, including a fine of up to $15,000 for attempted rape and up to $10,000 for abduction.

{¶ 16} The trial court stated that Guy would serve a period of 5 years on post-release control following his release from prison for each of his offenses and advised him of the consequences of violating post-release control. Likewise, Guy was informed of the necessary sex offender requirements and consequences for failing to comply with them, due to his being designated a Tier III sex offender for attempted rape and a Tier II sex offender for abduction.

{¶ 17} Guy stated that he was 31 years old and had some college education. He stated that he was not under the influence of any drug, alcohol, or medication, that he had no physical or mental problems that would make it difficult to hear or understand the plea proceedings, and that he was entering his plea voluntarily. He acknowledged that he could read the plea forms, that he had discussed them with his attorney, and understood them. The plea forms indicated that the prison sentence for attempted rape was a mandatory sentence and could not be reduced by judicial release, earned credit, or furlough. They also provided that Guy was not eligible for community control sanctions for attempted rape but was eligible on the abduction charge. The plea forms were signed on the record in open court.

{¶ 18} The trial court informed Guy that "as a technical matter," he was eligible for community control sanctions for the abduction charge. Although the trial court did not

specifically state whether or not Guy was eligible for community control sanctions for the attempted rape charge, the trial court made it clear on several occasions that he was going to be sentenced to a prison term and that pursuant to the plea agreement, Guy would be sentenced to prison. Nevertheless, when explaining that Guy was eligible for community control sanctions, the trial court informed him that a violation of community control sanctions could result in a prison term for the attempted rape charge and a separate term for the abduction charge, thus suggesting that he may in fact be eligible for community control sanctions on the attempted rape charge.

{¶ 19} Prior to sentencing, the trial court reviewed two potential issues regarding Guy's plea. First, the trial court indicated that although Guy was advised orally at the plea hearing that he faced a mandatory five years of post-release control sanctions, one of the plea forms erroneously listed post-release control as "up to" five years. Guy indicated on the record that he understood why they were correcting it and had no questions. Second, the trial court explained that for the attempted rape charge, the trial court had not explicitly informed him during the plea hearing that his prison term would be mandatory, even though it was listed correctly on the plea form. Therefore, the trial court explained that Guy's prison sentence for the attempted rape charge was mandatory, meaning that the prison term "cannot be reduced by judicial release, earned credit, or furlough." Tr. 41. Guy admitted that he had discussed the mandatory sentence with his attorney prior to entering his pleas and was aware that the plea form itself stated that the prison sentence was mandatory for that offense. When asked if that changed anything about his plea or gave rise to any questions, Guy indicated that it did not change his plea

and that he did not have any questions.   An amended plea form was signed and filed following the hearing.

**{¶ 20}** Based on this record, we conclude that the trial court did not completely fail to comply with the nonconstitutional notifications contained in Crim.R. 11(C)(2)(a). Rather, at worst, the trial court provided Guy with inaccurate information.   " '[A] trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a).' "   *State v. Rogers*, 2020-Ohio-4102, 157 N.E.3d 142, ¶ 19 (12th Dist.), quoting *State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926, ¶ 20*.   Accord State v. Harris*, 2d Dist. Clark No. 2020-CA-29, 2021-Ohio-1431, ¶ *22*. We reach this conclusion based on the totality of the record, which includes: 1) this was an agreed upon prison sentence that the trial court subsequently imposed; (2) the plea form correctly indicated that the sentence for attempted rape was mandatory and that Guy would not be subject to community control sanctions for that offense; (3) there were discussions on the record regarding eligibility for community control sanctions; and (4) the trial court discussed Guy's mandatory sentence with him prior to sentencing and verified that factor did not affect his plea.

**{¶ 21}** Because the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a)'s nonconstitutional advisements, Guy must establish that he would not have entered his guilty pleas had the trial court fully complied with Crim.R. 11(C)(2)(a).   *State v. Terrell*, 2d Dist. Clark No. 2020-CA-24, 2021-Ohio-1840, ¶ 21.   Guy did not establish any prejudice on the face of this record.   Rather, as noted above, after the trial court

reviewed with Guy that his sentence was a mandatory prison term, which meant that he was not eligible for community control sanctions, he informed the trial court that he had discussed the mandatory sentence with his attorney prior to entering his plea and was aware that the plea form itself stated that the prison sentence was mandatory for that offense. When asked if that changed anything about his plea or gave rise to any questions, Guy indicated that it did not change his plea and that he did not have any questions. Accordingly, we cannot conclude that Guy would not have entered his guilty pleas but for the trial court's error. Because no prejudice has been shown on this record, we will not reverse the trial court's judgment.

{¶ 22} Although Guy also claims that the trial court failed to comply with Crim.R. 11(C)(2)(b), the record does not establish this. Likewise, the trial court strictly complied with the constitutional notifications in Crim.R. 11(C)(2)(c).

{¶ 23} To the extent that Guy contends his plea was not knowingly, intelligently, and voluntarily entered due to his initial reluctance to enter a guilty plea or that the offer was ambiguous, we reject his arguments. Whether Guy was reluctant to enter a plea on August 21, 2023, has no bearing as to whether Guy knowingly, intelligently, and voluntarily entered a guilty plea on August 23, 2023. Indeed, the trial court appropriately halted the August 21, 2023 hearing on its own accord, granted Guy an opportunity to discuss everything with his attorney, and then reconvened the plea hearing two days later. Prior to the beginning of the plea hearing on August 23, 2023, Guy informed the court that he had had the opportunity to discuss everything he wanted to with his attorney and all of his questions had been answered. Thereafter, the trial court conducted a new full

plea colloquy without any hesitation from Guy.

{¶ 24} Furthermore, we do not agree with Guy that the plea agreement changed between August 21, 2023, and August 23, 2023, but even if it did, it does not affect the validity of Guy's guilty plea on August 23, 2023. The plea agreement was placed on the record and explained by the court prior to Guy entering his guilty plea. There was no doubt that on August 23, 2023, Guy was agreeing to enter guilty pleas to attempted rape and abduction in exchange for an agreed minimum indefinite prison sentence of four- to six-years. Moreover, the trial court imposed the agreed-upon sentence.

{¶ 25} Finally, in his reply brief, Guy raises an additional argument for the first-time regarding the trial court's notifications of post-release control. However, Guy is not permitted to raise new issues or assignments of error in a reply brief. *State v. Murnahan*, 117 Ohio App.3d 71, 82, 689 N.E.2d 1021 (2d. Dist.1996). Reply briefs are merely intended to be an opportunity to "reply to the brief of the appellee." App.R. 16(C). Thus, we will not address this argument.

{¶ 26} Guy's sole assignment of error is overruled.

## III. Conclusion

{¶ 27} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.